CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
February 13, 2025
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| NICCOKAWON PLEDGER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:23-cv-313 |
| | ) | |
| v. | ) | By: Michael F. Urbanski |
| | ) | Senior United States District Judge |
| HAROLD W. CLARKE et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Niccokawon Pledger, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983, alleging that he was assaulted by correctional officers while he was incarcerated at River North Correctional Center ("RNCC"). 2nd Am. Compl., ECF No. 92. Pending before the court is a motion to dismiss filed by the two RNCC nurses who assessed Pledger for injuries following the alleged assault, defendants Deborah Hornaday, R.N. and Karen Lamb, R.N. ECF No. 97. The motion and therefore this opinion are accordingly narrowly focused on Pledger's Eighth Amendment claim of deliberate indifference to his serious medical needs, which is the only claim pertaining to these defendants. 2nd Am. Compl., ECF No. 92, ¶ 70. The motion is fully briefed and ripe for review. ECF No. 98; ECF No. 102; ECF No. 104. For the reasons set forth below, the motion to dismiss is **GRANTED**.

### Background

The following summary of the facts is taken from the complaint. For purposes of the motion to dismiss, the facts are presented in the light most favorable to Pledger. See Washington v. Hous. Auth. of the City of Columbia, 58 F.4th 170, 177 (4th Cir. 2023) (noting

1

that a court reviewing a motion to dismiss must "accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff").

Pledger alleges that he was assaulted by several correctional officers while he was trying to use the inmate telephone on January 13, 2022. 2nd Am. Compl., ECF No. 92, ¶¶ 26-44. Although Pledger has a medical accommodation for a hearing disability permitting him to use the phone alone after other inmates have been secured in their cells, a correctional officer accused him of sneaking out to use the phone after lockdown. Id. ¶¶ 23, 26. Pledger alleges that he complied with the officer's request that he end his call and attempted to explain the situation, but the officer responded by using racial slurs and threatening Pledger with bodily harm. Id. ¶¶ 27-28.

The officer then radioed for a backup Emergency Response Team, and, while awaiting backup, the officer began using physical force on Pledger. Id. ¶¶ 29-30. When the Emergency Response Team arrived, the officers surrounded Pledger, placed him in handcuffs and shackles, and began using more physical force, including punching the back of Pledger's head. Id. ¶ 32. The complaint details how the assault continued until one officer stated, "Guys, I think he's dead." Id. ¶ 43. The officers then left Pledger in a shower stall, still restrained by shackles and handcuffs. Id.

Pledger alleges that this incident left him with "serious injuries." Id. ¶ 44. The complaint explains, "The plaintiff ribs hurted extremely bad, his head had split open and was bleeding in the back of it and top, his penis and testicles were extremely sore and he urinated blood for the next couple of days, his legs and ankles were sore and bruised/cut from the restraints and

2

the defendants manipulating them during the assaults, as well as his wrist and hands suffering similar injuries." Id.

While Pledger was still in the shower stall, Lamb and Hornaday assessed his injuries. Id. ¶ 53. The complaint does not clarify when and by whom the nurses were summoned. However, when the nurses arrived, Pledger relayed the assault described above. Id. Lamb and Hornaday "examined or assess[ed] the plaintiff by asking him if he had any injuries or was in any pain." Id. Pledger replied that "his ribs felt broken, his head hurt, his testicles and penis hurted, his arms, legs and wrist also were causing him extreme pain." Id. The nurses asked that the handcuffs and shackles be removed from Pledger's wrists and ankles. Id. ¶ 54. The nurses then asked Pledger "to show them the area of the injuries, to which the plaintiff did and pictures were taken by a unidentified staff member, of each area except his genitals, which were never examined." Id. Pledger showed the nurses "that the top and back of his head was bleeding by taking his hand and placing it on the areas, then showing the blood on his hands, from the lacerations." Id. ¶ 55. Lamb and Hornaday cleaned Pledger's wounds before the pictures were taken, explaining that they did not want any blood in the pictures. Id. ¶ 56.

Pledger alleges, "There was no further examination done on the plaintiff, no concussion protocol, or physical touch of any other injured area the plaintiff complained of." Id. Lamb and Hornaday both told Pledger that his ribs "'didn't look broken,' and that he would be alright without further examination." Id. ¶ 57. "The plaintiff immediately protested this comment telling [Lamb and Hornaday] that his head hurted, and he was in extreme pain and that they could not say he had no injuries just by looking at him, and not doing further examination and/or a x-ray." Id. Lamb and Hornaday then asked Pledger if he had any other

3

complaints before concluding the examination. Id. ¶ 58. No X-ray was called for, and the nurses did not take Pledger's vitals. Id.

Lamb and Hornaday were not named as defendants in Pledger's initial complaint, which focused on the alleged assault itself and subsequent disciplinary action against Pledger. ECF No. 1. Lamb and Hornaday were first named as defendants in Pledger's first amended complaint on February 23, 2024. ECF No. 52. Lamb and Hornaday first moved to dismiss on April 15, 2024. ECF No. 81. Pledger moved to amend his complaint on April 22, 2024. ECF No. 89. With the magistrate judge's permission, ECF No. 91, Pledger filed his second amended complaint on April 24, 2024, ECF No. 92. In his second amended complaint, Pledger alleges that Lamb and Hornaday violated his Eighth Amendment rights by acting with deliberate indifference in failing "to report physical injuries and to provide adequate medical assistance" and "not properly examining [him] for head trauma such as a concussion or other serious injuries." Id. ¶ 70. As to Lamb and Hornaday, the second amended complaint seeks declaratory relief, $50,000 jointly and severally in compensatory damages, and $20,000 each in punitive damages. Id. at Prayer for Relief. Lamb and Hornaday again moved to dismiss on May 8, 2024. ECF No. 97. They principally contend that Pledger's allegations against them amount to a disagreement with their medical judgment, not an Eighth Amendment violation. Mem. Supp. Mot. Dismiss, ECF No. 98.

### Standard of Review

Rule 12(b)(6) permits defendants to seek dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief

4

that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While "detailed factual allegations" are not required, "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff." Wilcox v. Brown, 877 F.3d 161, 166-67 (4th Cir. 2017). "Additionally, when a plaintiff raises a civil rights issue and files a complaint pro se, the court must construe pleading requirements liberally." Id. Nevertheless, "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A complaint filed by a pro se plaintiff "still must contain enough facts to state a claim for relief that is plausible on its face." Thomas v. Salvation Army S. Terr., 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

## Discussion

"The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" Anderson v. Kingsley, 877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII). "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). An Eighth Amendment violation occurs when a defendant "demonstrates 'deliberate indifference' to an inmate's serious medical needs." Id.

5

An Eighth Amendment claim of deliberate indifference has two components. Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). The plaintiff must show that he had serious medical needs (the objective component) and that a defendant acted with deliberate indifference to those needs (the subjective component). Hixson v. Moran, 1 F.4th 297, 302 (4th Cir. 2021). Here, Pledger has shown neither that he objectively had a serious medical need nor that Lamb and Hornaday subjectively acted with deliberate indifference.

A medical need is sufficiently serious to satisfy the objective component "when it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019) (internal quotation marks omitted). Here, Lamb and Hornaday were assessing Pledger immediately after the incident giving rise to his injuries, so this is not a case where a physician had previously diagnosed a medical need. 2nd Am. Compl., ECF No. 92, ¶¶ 53-54. Accordingly, to state a claim, Pledger would need to allege that he had a medical need "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gordon, 937 F.3d at 356. To this end, Pledger's most significant allegation is that, having told the nurses that he had been punched in the head during an assault, he told Lamb and Hornaday that his head was hurting and demonstrated that his head was bleeding in two places. 2nd Am. Compl., ECF No. 92, ¶¶ 54-55. Pledger argues that this would alert even a lay person to the possibility that he may be suffering a concussion or other serious injuries.

Courts in this circuit have previously found that a plaintiff's concern that he may have suffered a concussion, standing as a "self-diagnosis alone," is not enough to satisfy the objective component of a deliberate indifference claim. Riddick v. Collins, No. 7:20-cv-742,

6

2023 WL 2707428, at *4 (W.D. Va. Mar. 30, 2023) (citing Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir. 1994)). Pledger has arguably alleged something more than a self-diagnosis in that Pledger's concern that he had a concussion was founded on facts such as that he was bleeding from his head and was experiencing head pain after an alleged punch to the head. Compl., ECF No. 92, ¶ 55. Still, bleeding does not in itself rise to the level of seriousness required to satisfy the objective prong of a deliberate indifference claim. Abernathy v. Anderson, 984 F.3d 1, 8-9 (1st Cir. 2020) (concluding that an inmate's alleged injuries did not satisfy the "serious medical need inquiry" where the inmate claimed to have suffered "cuts, bruises, swelling, and some bleeding" as a result of an altercation); Horace v. Gibbs, 802 F. App'x 11, 14 (2d Cir. 2020) (finding that "swelling and cuts" are "not sufficiently serious to meet the objective prong"); Shelton v. Angelone, 148 F. Supp. 2d 670, 679 (W.D. Va. 2001) (concluding that three bleeding cuts and two signature marks from a stun gun did not qualify as serious medical needs).

Moreover, the Court cannot conclude that Pledger has alleged an objectively serious medical need where Pledger has not alleged that he in fact had a concussion. The complaint does not contain allegations about what came of Pledger's injuries after he was examined by Lamb and Hornaday, and the documentation attached to his briefing indicates only that Pledger "was treated for [a] minor injury to [the] back of [his] head." ECF No. 104-1 at 3. Although some, maybe even many, lay observers would think bleeding and head pain warrant a doctor's attention, Pledger's medical need cannot be deemed "obvious" or "easily recogniz[able]" where he has not alleged that he actually had the medical need in question. Gordon, 937 F.3d at 356.

7

Additionally, Pledger has not alleged facts plausibly indicating that Lamb and Hornaday subjectively acted with deliberate indifference to his medical need. Deliberate indifference is "a higher standard for culpability than mere negligence or even civil recklessness." Jackson, 775 F.3d at 178. "In the context of a claim related to the denial of medical treatment or a delay in providing such treatment, 'a defendant acts with deliberate indifference if he had actual knowledge of the plaintiff's serious medical needs and related risks, but nevertheless disregarded them.'" Griffin v. Mortier, 837 F. App'x 166, 170 (4th Cir. 2020) (quoting Gordon, 937 F.3d at 357). A plaintiff can satisfy the subjective knowledge requirement through direct evidence of a defendant's actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence that the defendant knew of a substantial risk from the very fact that the risk was obvious. Gordon, 937 F.3d at 357. Here, Pledger has not alleged that Lamb and Hornaday had any knowledge on which they failed to act.

Instead, Lamb and Hornaday acted promptly when they took steps to examine Pledger for injuries. 2nd Am. Compl., ECF No. 92, ¶ 53. They asked him questions, requested that Pledger's restraints be removed so that they could better analyze his body for injuries, and took pictures. Id. ¶¶ 54-56. Pledger does not dispute that these were appropriate initial diagnostic steps.

Pledger's disagreement is instead with the results of this initial analysis. Having examined Pledger and inquired into his injuries, Lamb and Hornaday decided that no further examination was necessary. Id. ¶ 57. In other words, far from knowing that Pledger needed additional medical attention and disregarding that knowledge, Lamb and Hornaday expressed that they were convinced "that he would be alright without further examination" and acted

8

accordingly. Id. Indeed, Pledger has not alleged that this conclusion was incorrect. He has not alleged, for example, that he was in fact concussed or that he continued to suffer long-term effects from his injuries. It cannot be plausible that Lamb and Hornaday "had actual knowledge of the plaintiff's serious medical needs and related risks, but nevertheless disregarded them," where no such medical needs or related risks have been alleged to exist. Griffin, 837 F. App'x at 170.[1]

Pledger complains that "[t]here was no further examination done on the plaintiff, no concussion protocol, or physical touch of any other injured area," and Pledger notes that the nurses did not call for X-rays or take Pledger's vitals. Id. ¶¶ 56-58. However, these allegations amount to a "'[d]isagreement[] between an inmate and [nurses] over the inmate's proper medical care,'" and the Fourth Circuit has "consistently found such disagreements to fall short of showing deliberate indifference." Jackson, 775 F.3d at 178 (quoting Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)); see also United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011). Indeed, the Supreme Court has specifically determined that "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." Estelle v. Gamble, 429 U.S. 97, 107 (1976). Thus, Pledger has not satisfied the subjective component of his deliberate indifference claim.

---

[1] Pledger's claim might be thought of as a claim that Lamb and Hornaday failed to call for prompt testing, delaying the possibility of treatment (though, again, Pledger has not alleged that he ever was diagnosed with or treated for a concussion or any other injury), but the Fourth Circuit has held that delayed medical care cannot constitute an Eighth Amendment violation "unless 'the delay results in some substantial harm to the [plaintiff,]' such as a 'marked' exacerbation of the [plaintiff's] medical condition or 'frequent complaints of severe pain.'" Formica v. Aylor, 739 F. App'x 745, 754 (4th Cir. 2018). Once again, Pledger has not alleged that the nurses' decision not to further examine him had any adverse results to speak of.

9

Pledger contends that he is not challenging the nurses' medical judgment, but rather the fact that they did not make a medical judgment at all because they failed to conduct an adequate assessment of his injuries. Resp., ECF No. 104 at 3. Pledger relies on Tillery v. Owens, wherein a district court explained, "We will defer to the informed judgment of prison officials as to an appropriate form of medical treatment. But if an informed judgment has not been made, the court may find that an eighth amendment claim has been stated." 719 F. Supp. 1256, 1308 (W.D. Pa. 1989) (citing Supre v. Richetts, 792 F.2d 958, 963 (10th Cir. 1986)). The distinction Pledger draws between disputing an informed medical judgment and alleging that no informed medical judgment was made is somewhat persuasive in that it would seem unfair to permit prison medical staff to circumvent the Eighth Amendment by refusing to learn about inmates' medical needs so as to avoid being charged with "actual knowledge." Griffin, 837 F. App'x at 170. However, the facts alleged by Pledger indicate that no such intentional ignorance transpired here. Rather, Lamb and Hornaday did assess Pledger's injuries by looking at him, taking pictures, asking him questions, and having his restraints removed. 2nd Am. Compl., ECF No. 92, ¶¶ 53-57. While Pledger found this evaluation to be cursory, Lamb and Hornaday exercised their medical judgment in determining that this was all that was required.[2]

Thus, because Pledger has not alleged that Lamb and Hornaday were subjectively deliberately indifferent to a serious medical need, or indeed that he objectively had a serious

---

[2] Moreover, this case is not analogous to the actual facts of Tillery. The court in Tillery only "question[ed] medical judgment" in a case concerning systematic failures where X-rays were not ordered for new inmates who had histories of heart or chest disease, where diabetic inmates were not provided laboratory testing and insulin, and where medical staff proved indifferent to the risk of HIV and AIDS in the prison, despite inmates showing obvious symptoms. Tillery, 719 F. Supp. at 1308-09. By contrast, Pledger has not alleged that medical staff here resisted further testing in the face of either a previously diagnosed condition or obvious symptoms of disease.

medical need, he has not stated a plausible Eighth Amendment claim. Accordingly, the motion to dismiss the claims against these defendants must be **GRANTED**.

An appropriate order will be entered.

It is **SO ORDERED**.

Entered: 02/13/2025

Michael F. Urbanski
Senior United States District Judge

11