CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 31, 2026

LAURA A. AUSTIN, CLERK
BY:
s/A. Beeson
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **NICCOKAWON PLEDGER,** | ) | |
| Plaintiff, | ) | **Case No. 7:23-cv-00313** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **HAROLD W. CLARKE, et al.,** | ) | **Senior United States District Judge** |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Niccokawon Pledger, an inmate proceeding pro se, filed this civil rights action against eighteen individuals employed by or associated with the Virginia Department of Corrections (VDOC). Pledger's second amended complaint asserts claims under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act ("ADA"), and state tort law. The case is presently before the court on a motion for partial summary judgment filed by the defendants represented by the Office of the Attorney General of Virginia (collectively, the VDOC defendants). ECF No. 137. For the reasons set forth below, the motion for partial summary judgment is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**. The case will proceed to trial on federal constitutional and state tort claims asserted against eleven defendants arising from the use of force at River North Correctional Center (River North). Other remaining claims will be severed into a separate action.

## I.    Factual Background

### A.    Pledger's Criminal and Appellate Proceedings in Massachusetts

In May 2018, a Massachusetts Superior Court jury convicted Pledger of second-degree murder, armed assault with the intent to commit murder, assault and battery by means of a

dangerous weapon, carrying a firearm without a license, and carrying a loaded firearm without a license. See Commonwealth v. Pledger, No. 2022-P-0872, 2024 WL 1151763, at *1. (Mass. App. Ct. Mar. 18, 2024). Pledger was sentenced to life in prison with the possibility of parole.

Pledger's direct appeal was stayed pending the disposition of a motion for new trial. See Brief for Defendant-Appellant Niccokawon Pledger at 7, Commonwealth v. Pledger, No. 2022-P-0872 (Mass. App. Ct. Feb. 6, 2023).[1] The motion for new trial was filed in the Massachusetts Superior Court on July 16, 2021. Id. at 8. The Commonwealth responded to the motion on November 17, 2021, the motion was argued on February 11, 2022, and it was denied on May 26, 2022. See Document 14-1 at 18–19, Pledger v. Jenkins, 1:25-cv-10625 (D. Mass. June 25, 2025); see also Memorandum of Decision and Order at 1, Commonwealth v. Pledger, No. 1684CR0740 (Mass. Superior Ct. May 26, 2022), Pl.'s Ex. 13, ECF No. 157-2 at 47 (concluding that the motion for new trial must be denied without the need for an evidentiary hearing).

Pledger appealed the denial of the motion for new trial and that appeal was consolidated with his direct appeal from his convictions. On February 6, 2023, Pledger's counsel filed a brief in support of the consolidated appeal. See Brief for Defendant-Appellant Niccokawon Pledger, supra. Oral argument was held on December 7, 2023, and the Appeals Court of Massachusetts issued a decision on March 18, 2024. The appellate court vacated Pledger's firearm convictions, affirmed the remaining convictions, and affirmed the order denying his motion for new trial.

---

[1] The court may take judicial notice of the state court documents relating to Pledger's criminal and appellate proceedings. See Fusaro v. Cogan, 930 F.3d 241, 245 n.1 (4th Cir. 2019) ("This Court takes judicial notice of the state court documents relating to Fusaro's prosecution, as the district court properly did.") (citing Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239–40 (4th Cir. 1989)). The briefs filed by counsel in the Appeals Court of Massachusetts are available online at https://www.ma-appellatecourts.org (last accessed Mar. 26, 2026). The docket sheet from the criminal action is part of the record in a federal habeas corpus case filed in the United States District Court for the District of Massachusetts. See Document 14-1, Pledger v. Jenkins, 1:25-cv-10625 (D. Mass. June 25, 2025).

Commonwealth v. Pledger, 2022 WL 1151763, at *4. Pledger then "sought further appellate review from the Massachusetts Supreme Judicial Court . . . which was denied in early 2025." Pledger v. Jenkins, No. 1:25-cv-10625, 2025 WL 1677709, at *1 (D. Mass. May 27, 2025).

**B.    Pledger's Confinement in Virginia**

In the fall of 2020, Pledger was transferred to the custody of the VDOC pursuant to an Interstate Corrections Compact (ICC) agreement between the Commonwealth of Virginia and the Commonwealth of Massachusetts. Pledger was initially housed at Nottoway Correctional Center (Nottoway), where the Institutional Classification Authority (ICA) recommended that he be classified at Security Level 5 and transferred to Wallens Ridge State Prison (Wallens Ridge). See Pl.'s Ex. 6, ECF No. 157-2 at 27. On March 3, 2021, however, ICC Coordinator Kyle Rosch recommended that Pledger be classified at Security Level 4 and transferred to River North, Sussex I State Prison, or Sussex II State Prison. Pl.'s Ex. 7, ECF No. 157-2 at 29. Rosch also approved the recommendation. Id.

Pledger alleges that he spoke to Rosch before the security level and transfer decisions were made and showed Rosch paperwork proving that he had been found not guilty of participating in the assault of a staff member at a Massachusetts prison. Pledger Aff., ECF No. 157-2 at 19–20.  Because the paperwork contradicted information provided to the VDOC, Rosch told Pledger that he would "fix the false information" in Pledger's correctional file and arrange for Pledger to go to a lower security facility. Id. Pledger was subsequently transferred to River North in accordance with Rosch's recommendation.

3

On January 13, 2022, while housed in the B-3 housing unit at River North, Pledger was allowed to leave his cell to make a telephone call. 2d Am. Compl. ¶ 23, ECF No. 92.[2] Pledger was permitted to use the telephone while all of the other inmates in the housing unit were locked in their cells. Pledger alleges that this procedure was implemented to accommodate his "documented hearing disability." Id.

While Pledger was using the telephone, he "placed his caller on hold to go to his assigned cell and get legal documents." Id. ¶ 24. After he returned to the phone and resumed his call, Correctional Officer Dennis Landry accused Pledger of sneaking out of his cell to use the phone after lockdown and demanded that Pledger end the call. Id. ¶ 26. Pledger complied with Landry's order and attempted to explain the situation. According to Pledger, Landry proceeded to physically attack him after making the following exclamations: "You're gonna learn that this ain't Massachusetts or wherever your black ass from boy! We gonna teach you a lesson they should've taught you when you attacked them guards up there!" Id. ¶ 30 (internal quotation marks omitted).

When Landry started punching him "without justification or reason," he attempted to defend himself "by swinging back [with] closed-fist punches . . . , using only enough force necessary to stop the unprovoked attack against him." Id. ¶¶ 30–31. Once Landry stopped attacking him, Pledger got "down on the ground in a prone position to show he was not resisting" and allowed Landry to handcuff his hands behind his back. Id. ¶ 31. By that time, members of an emergency response team had arrived, and Pledger was surrounded by multiple officers, including Jordan Adams and Charles Weaver. Id. ¶ 32. Pledger alleges that Adams and

---

[2] Pledger's second amended complaint is "signed, sworn, and submitted under penalty of perjury," as required for a verified complaint. Goodman v. Diggs, 986 F.3d 493, 495 n.2 (4th Cir. 2021) (internal quotation marks omitted).

4

Weaver joined Landry in punching him in the back of his head while he was fully restrained. Id. He also claims that Logan Halsey, Christopher Coley, Levi Newman, Robert Miller, Lindsay Davis, Christie King, Marcella Goad, and Warden David Anderson witnessed the attack and did nothing to protect him, despite having "ample opportunities to say something or intervene." Id. ¶¶ 33, 98–99.

Pledger was subsequently escorted out of the housing unit by Landry, Adams, Weaver, and other responding officers. Id. ¶ 36. While the group was in a hallway, Landry instructed officers to hold Pledger against the wall and "kick his black ass." Id. (internal quotation marks omitted). Pledger alleges that Adams and Weaver began to punch, kick, and stomp on him while yelling racially-charged comments and that Warden Anderson and other officers made no attempt to protect him. Id. ¶¶ 36–39.

Officers then took Pledger to a shower stall in the Restorative Housing Unit (RHU) where, "without any resistance by [Pledger] or justification," Adams, Newman, Weaver, and Coley "all started screaming out 'stop resisting' and began attacking [Pledger] again with punches, kicks, [and] stomps." Id. ¶ 40. After Pledger fell on the ground, Adams began twisting his testicles while other officers continued to physically assault him. Id. ¶ 41. During the beating, Miller "stood in the shower stall doorway" and "did not once try to intervene." Id. ¶ 42. Pledger alleges that the officers left him lying motionless on the floor of the shower after one of the officers suggested that Pledger might be dead. Id. ¶ 43.

That same day, Landry charged Pledger with two disciplinary offenses: disobeying a direct order (VDOC Offense Code 201A) and aggravated assault upon a non-offender (VDOC Offense Code 105A). Id. ¶ 45; see also Landry Decl. ¶¶ 6–7, ECF No. 138-6. Additionally,

5

Warden Anderson arranged for Pledger to be transferred to Wallens Ridge. Anderson Aff. ¶ 6, ECF No. 138-2.

Institutional Hearings Officer A. Stanley [3] was responsible for conducting the disciplinary hearing for the charges brought by Landry. 2d Am. Compl. ¶ 46. Prior to the disciplinary hearing, Pledger submitted requests for video evidence and witnesses. Id. ¶¶ 47–48. Pledger asserts that the requested video footage would have shown him "being attacked first, without provocation or justification . . . and only fighting back in self-defense" and that the requested witnesses observed him being attacked by Landry. Id. Nonetheless, Stanley determined that the requested video footage and proposed witness testimony was "irrelevant" and denied the requests. Stanley (King) Aff. ¶¶ 8–9, ECF No. 138-5.[4]

Stanley conducted the disciplinary hearing on February 4, 2022. Id. ¶ 11. Pledger participated by speaker phone from Wallens Ridge, and Landry appeared in person. Id. When Landry gave a statement, Pledger reported "that he could not hear what Landry said because he needed a hearing device." Id. Pledger alleges that despite being "documented as hard-of-hearing," Stanley denied him "any hearing/translating device or a translator/interpreted [as an] ADA accommodation for being a known hearing impaired inmate." 2d Am. Compl. ¶ 48. Landry ultimately found Pledger guilty. Stanley (King) Decl.    ¶ 13. She imposed a 90-day loss of telephone privileges and a 90-day restriction on commissary privileges. Id.. Pledger alleges that Stanley also knew that the conviction for aggravated assault upon a non-offender would result in him being kept in segregation and qualify him for "placement in 'long term step down' which would result in long term segregation indefinitely." 2d Am. Compl. ¶ 51. He contends

---

[3] Stanley's last name is now King. For consistency, the court will continue to refer to her as Stanley.

[4] Stanley's affidavit fails to explain why she believed the requested evidence was irrelevant.

6

that Stanley did not conduct the disciplinary hearing "to seek out the truth of the matter" and instead attempted to ensure that he "was convicted and immediately harshly punished with sanctions and excessive time in segregation." Id. ¶ 50.

Pledger alleges that he was also subject to "tablet sanctions" during the same timeframe that his commissary and telephone privileges were suspended and that Stanley and another correctional official, C. MacVean, prevented him from contacting his attorney from February 4, 2022, until July 4, 2022. Id. ¶ 52. Pledger asserts that he "had ongoing criminal legal issues" during that period, "which involved challenging his criminal conviction." Id. Pledger alleges that he "missed important court dates" and that "his legal counsel was forced to move forward without his knowledge." Id.

Pledger appealed Stanley's disciplinary decision to Warden Anderson. Id. ¶ 60. Pledger maintains that he identified "several legitimate due process violations" on appeal and that Anderson nonetheless upheld Stanley's decision at Level I of the appeal process. Id. He asserts that Anderson knew that upholding the convictions "would keep him in segregation indefinitely and [cause him to be] placed in a supermax facility or setting." Id.

Pledger submitted a Level II appeal to Regional Administrator Carl Manis. Id. ¶ 61. He alleges that Manis allowed the decision to stand despite being "presented with the legitimate violations of due process." Id.

Pledger was placed in segregation after being transferred to Wallens Ridge. Id. ¶ 62. In March 2022, the ICA recommended that Pledger's security level be changed to "S – Segregation" (SL-S) and that he be transferred to an "SL-S facility based on the "recent 105A [(aggravated assault upon a non-offender)] infraction." Pl.'s Ex. 5, ECF No. 157-2 at 24–25. The ICA also reported that Pledger had been convicted of ordering an assault on a

7

Massachusetts correctional officer and "is a member of the Black Guerilla Family." Id. The ICA's recommendations were approved, and arrangements were made for Pledger "to be transferred to [Red Onion] for possible assignment to SL[-]S." Id.

Pledger alleges that he met with ICC Coordinator Rosch again in April 2022, while he was still housed at Wallens Ridge. 2d Am. Compl. ¶ 62. According to Pledger, Rosch viewed video of the incident at River North and "agreed that [Pledger] was not the aggressor" and that Landry "produced . . . a false narrative of the incident." Id. Nonetheless, Rosch "failed to act on this information." Id. Pledger further alleges that Rosch "also admitted that he was aware of . . . false accusations and convictions" in his institutional file, including false accusations related to the alleged assault of Massachusetts correctional officers and his purported involvement with the "Black Guerilla Family" and other security threat groups. Id. Pledger alleges that Rosch "failed to correct this false information, leaving [him] as a target and allowing false information to be used to consider his placement in a supermax setting indefinitely and remain a target for future attacks." Id. Pledger also alleges that Rosch is "aware" of the fact that he is a "hard-of-hearing inmate" and that Rosch has not ensured that his "accommodations are met." Id. ¶ 63.

The operative complaint also names as a defendant Harold Clarke, the Director of the VDOC at the time of the events giving rise to this action. Pledger alleges that Clarke "had knowledge of the incident" that occurred at River North on January 13, 2022, and "numerous other incidents . . . of excessive force." Id. ¶ 64. Pledger asserts that Clarke "took no steps to discipline or correct this pattern[] of assaults and attacks at this facility by guards including numerous defendants." Id. Pledger further alleges that Clarke was "aware that false charges at [River North have] been used by officers, including multiple defendants, to cover their actions of unlawful attacks and to place prisoners including [Pledger] in segregation indefinitely . . .

8

without fair and impartial hearings." Id. Pledger also alleges that Clarke had "direct knowledge that [River North] is not equipped with adequate ADA accommodations that are mandated for hard-of-hearing prisoners." Id.

## II.  Procedural History

In April 2024, after being transferred to Red Onion and assigned to long-term segregation, Pledger filed the operative second amended complaint against eighteen defendants, including VDOC defendants Harold Clarke, Kyle Rosch, David Anderson, Dennis Landry, Robert Miller, Christopher Coley, Levi Newman, Jordan Adams, Logan Halsey, Charles Weaver, A. Stanley, Carl Manis, Lindsay Davis, Christie King, Marcella Goad, and C. MacVean.[5] Clarke, Rosch, and Anderson are sued in their individual and official capacities. The other defendants are sued only in their individual capacities. See 2d Am. Compl. ¶¶ 4–21.

The VDOC defendants construed the operative complaint to assert the following claims:

| | | |
|---|---|---|
| Claim 1: | Defendants Landry, Weaver, and Adams used excessive force against Plaintiff and assaulted and battered him in the B-3 Housing Unit on January 13, 2022, in violation of the Eighth Amendment and Virginia law. |
| Claim 2: | Defendants Halsey, Coley, Newman, Anderson, Miller, Davis, Goad and King failed to protect Plaintiff in the B-3 Housing Unit from the force used by the other Defendants on January 13, 2022, in violation of the Eighth Amendment. |
| Claims 3: | Defendants Landry, Adams, and Weaver used excessive force against Plaintiff and assaulted and battered him in the B-Building hallway on January |

---

[5] The claims against two medical defendants represented by separate counsel were dismissed on February 13, 2025. See Order, ECF No. 125.

13, 2022, in violation of the Eighth Amendment and Virginia law.

Claim 4:    Defendant Anderson failed to protect Plaintiff in the B-building hallway from the force used by the other Defendants on January 13, 2022, in violation of the Eighth Amendment.

Claim 5:    Defendants Newman, Adams, Weaver, and Coley used excessive force against Plaintiff and assaulted and battered him in the A-2 pod shower stall on January 13, 2022, in violation of the Eighth Amendment and Virginia law.

Claim 6:    Defendant Miller failed to protect Plaintiff in the A-2 pod shower stall from the force used by the other Defendants on January 13, 2022, in  violation of the Eighth Amendment.

Claim 7:    Defendant Stanley deprived Plaintiff of his due process rights during his disciplinary hearing and found him guilty of false disciplinary charges in violation of the Fourteenth Amendment and Virginia law.

Claim 8:    Defendants Stanley and MacVean denied Plaintiff the ability to communicate with counsel and denied his right of access to the courts in violation of Plaintiff's First and Sixth Amendment rights and Virginia law by authorizing and approving Plaintiff's telephone sanctions and deactivating his attorney's number.

Claim 9:    Defendants Anderson and Manis reviewed and approved Plaintiff's disciplinary conviction without correcting the procedural violations in violation of Plaintiff's Fourteenth Amendment right to due process and Virginia law.

Claim 10:    Defendants Clarke and Rosch are liable under the theory of deliberate indifference—failure to protect and failure to act—in violation of Plaintiff's Eighth and Fourteenth Amendment rights and Virginia law.

10

> Claim 11:      Defendants Clarke and Rosch are liable under the
> theory of supervisory liability—failure to act and
> failure to investigate—in violation of Plaintiff's
> Fourteenth Amendment right to due process.

VDOC Defs.' Br. Supp. Mot. Summ. J., ECF No. 138 at 1–2 (internal citations omitted).  The operative complaint also asserts violations of Title II of the ADA, the Privileges and Immunities Clause of Article IV of the Constitution, and the Equal Protection Clause of the Fourteenth Amendment. 2d Am. Compl. ¶ 71 and p. 37.

The VDOC defendants have moved for summary judgment on certain claims asserted under § 1983 as part of what they have identified as Claims 7 through 11. The VDOC defendants acknowledge that genuine issues of material fact exist with respect to the force-related claims asserted in Claims 1 through 6.

In response to the motion for partial summary judgment, Pledger asserts that he does not dispute the particular argument made on behalf of Clarke. Pl.'s Resp. Opp'n Mot. Summ. J., ECF No. 157 at 3. Pledger otherwise opposes the motion and argues that the VDOC defendants have misconstrued his theories of liability against Rosch. Id. Pledger also notes that the alleged "ADA violations" have not been addressed by the VDOC defendants. Id. at 5.

## II.      Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, the court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Dulaney v. Packaging Corp. of Am., 673 F.3d

11

323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986)).

When ruling on a motion for summary judgment, the court must "view the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." Id. at 312. The court may not "weigh the evidence or make credibility determinations." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015). "To survive summary judgment, 'there must be evidence on which the jury could reasonably find for the nonmovant.'" Lee v. Town of Seaboard, 863 F.3d 323, 327 (4th Cir. 2017) (brackets omitted) (quoting Anderson, 477 U.S. at 252).

"As a general rule, when one party files a motion for summary judgment, the nonmovant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). "However, it is well-established that a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021) (internal quotation marks omitted); see Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Nonetheless, conclusory allegations in a verified complaint or opposing affidavit are insufficient to survive summary judgment. See Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013) ("Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere

speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.").

### III.    Discussion

**A.    Claims Challenged in the Motion for Partial Summary Judgment**

**1.    Section 1983 Claims Against Clarke in His Individual Capacity**

In the pending motion, the defendants first move for summary judgment on any claim asserted under § 1983 against Clarke in his individual capacity. See ECF No. 138 at 6–7. As reflected above, Clarke was the Director of the VDOC at the time of the events described in the second amended complaint.

"Section 1983 authorizes a plaintiff to sue for an alleged deprivation of a federal constitutional right by an official acting 'under color of' state law." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018). "To establish personal liability under § 1983, however, the plaintiff must 'affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights.'" Id. (quoting Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985)). "Importantly, mere knowledge of such a deprivation does not suffice." Id. Instead, state officials "may be liable in their individual capacities only for their personal wrongdoing or supervisory actions that violated constitutional norms." Timpson v. Anderson Cnty. Disabilities & Special Needs Bd., 31 F.4th 238, 257 (4th Cir. 2022). To establish supervisory liability, a plaintiff must prove the following elements:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there

13

> was an affirmative causal link between the supervisor's inaction
> and the particular constitutional injury suffered by the plaintiff.

Johnson v. Robinette, 105 F.4th 99, 123 (4th Cir. 2024) (citing Shaw v. Stroud, F.3d 791, 798 (4th Cir. 1994)).

As Pledger seemingly recognizes in response to the pending motion, the record is devoid of evidence from which a reasonable jury could find that Clarke was personally involved in any act or omission that resulted in the alleged constitutional deprivations. Nor is there sufficient evidence to satisfy the test for supervisory liability under § 1983. For instance, there is no evidence from which a reasonable jury could find that Clarke knew or should have known that any of his subordinates was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Pledger or any other inmate. See Timpson, 331 F.4th at 257–58 ("Establishing a 'pervasive and unreasonable risk of risk of harm under the first element 'requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinates poses an unreasonable risk of harm of constitutional injury.'") (quoting Shaw, 13 F.3d at 799). Likewise, there is no evidence from which a reasonable jury could find that Clarke tacitly authorized the offensive practices of which Pledger complains or acted with deliberate indifference to a pervasive risk of harm. See id. ("To prove 'deliberate indifference' under the second element, the plaintiff typically must show a supervisor's continued inaction in the face of documented widespread abuses.'") (quoting Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984)). The conclusory allegation— without evidentiary support—that Clarke had knowledge of similar incidents at River North is insufficient to withstand summary judgment. See King v. Riley, 76 F.4th 259, 269 (4th Cir. 2023) (concluding that a plaintiff's "boilerplate" allegations against supervisory correctional

14

officials, which lacked "specificity and factual support," did "not state a claim for relief or allow [the] plaintiff to get past summary judgment") (internal quotation marks omitted). Accordingly, the VDOC defendants' motion will be granted to the extent it seeks summary judgment on any § 1983 claim asserted against Clarke in his individual capacity.

### 2.    Section 1983 Claims Against Rosch in His Individual Capacity

The VDOC defendants next move for summary judgment on any § 1983 claim asserted against Rosch in his individual capacity. ECF No. 138 at 6–8. They argue that Pledger has failed to establish that Rosch was "personally involved in any alleged constitutional violation" or "demonstrated deliberate indifference toward . . . subordinates' actions." Id. at 8. In response, Pledger argues that Rosch is personally responsible for his care and custody as an inmate in the custody of the VDOC pursuant to an ICC agreement, that he made Rosch aware of false information in his file before and after the incident involving the use of force by defendant Landry and other defendants, and that Rosch "did nothing both times." ECF No. 157 at 4. He asserts that Rosch had "a duty to protect [him] from harm due to false information and fail[ed] to act." Id.

To the extent Pledger seeks to hold Rosch responsible for the use of excessive force by correctional officers at River North, Rosch is entitled to summary judgment. The Eighth Amendment's prohibition of cruel and unusual punishment "imposes on prison officials an affirmative 'obligation to take reasonable measures to guarantee the safety of . . . inmates.'" Thompson v. Commonwealth, 878 F.3d 89, 97 (4th Cir. 2017) (quoting Whitley v. Albers, 475 U.S. 312, 319–20 (1986)). "The deliberate indifference standard generally applies to cases alleging failures to safeguard [an] inmate's health or safety, including failing to protect inmates from attack . . . ." Id. A claim of deliberate indifference has an objective and a subjective

15

component. First, an inmate "'must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury,' or a substantial risk thereof." Raynor v. Pugh, 817 F.3d 123, 127 (4th Cir. 2016) (quoting Danser v. Stansberry, 772 F.3d 340, 346–47 (4th Cir. 2014)). Second, the inmate must show that a correctional official "knew of and disregarded an excessive risk to inmate health or safety.'" Danser, 772 F.3d at 347 (internal quotation marks and alterations omitted). "Notably, the official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). This is a "very high standard" that is not met by a showing of mere negligence. Ford v. Hooks, 108 F.4th 224, 230 (4th Cir. 2024) (internal quotation marks omitted). "Thus, 'an official's failure to alleviate a significant risk that he should have perceived but did not' will not give rise to a claim under the Eighth Amendment." Danser, 772 F.3d at 347 (quoting Farmer, 511 U.S. at 838).

Here, Pledger alleges that he spoke to Rosch in March 2021, while he was still incarcerated at Nottoway, and showed Rosch paperwork indicating that his institutional records contained false information regarding his alleged participation in the assault of a staff member at a Massachusetts prison. Pledger further alleges that Landry accused him of attacking guards in Massachusetts before physically assaulting him at River North, thereby suggesting that the false information remained in Pledger's VDOC file at the time of the January 13, 2022, events, despite Pledger's prior conversation with Rosch. Even assuming the truth of these allegations, no reasonable jury could find that Rosch knew of and disregarded an excessive risk to Pledger's health or safety. There is no direct evidence indicating that Rosch "actually knew" that Pledger faced a substantial risk of being harmed by correctional officers based on the particular information from Massachusetts. Pfaller v. Amonette, 55 F.4th 436,

16

460 (4th Cir. 2022). Nor is there any circumstantial evidence indicating "that the risk was so obvious that it can be inferred that [Rosch] knew of it." Id. at 460–61. For instance, Pledger does not point to any prior similar incidents that would have put Rosch on notice of the particular risk at issue. Pledger's "'unsupported speculation' that the defendant was aware of the risk 'is insufficient to create a disputed issue of material fact for purposes of summary judgment.'" Id. (quoting Danser, 772 F.3d at 348 n.10). Thus, to the extent Pledger claims that Rosch violated the Eighth Amendment by failing to protect him from the use of force at River North on January 13, 2022, Rosch is entitled to summary judgment.[6]

Pledger also asserts in the operative complaint that Rosch "failed to correct" false information in his VDOC file, "allow[ed] false information to be used to consider his placement in a supermax setting indefinitely," and "aided" in violating his "rights of due process" 2d. Am. Compl. ¶¶ 62–63. Similarly, an affidavit submitted in response to the pending motion indicates that Rosch participated in a hearing held at Red Onion to evaluate Pledger's security level and that Rosch "allowed the board to use [the] false information to deny [him] release from segregation." Pl. Aff., ECF No. 157-2 at 21–22.

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Although Pledger acknowledges that he had at least some opportunity to be heard regarding the false information, ECF No. 157-2 at 21, he also arguably has "a limited right, grounded in the due process clause," to have the false information "expunged from his

---

[6] To the extent Pledger seeks to hold Rosch liable for the use of force based on a theory of supervisory liability, the claim fails for the same reasons set forth above with respect to Clarke.

file." Paine v. Baker, 595 F.2d 197 (4th Cir. 1979). In Paine, the Fourth Circuit held that "in certain limited circumstances, a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied on to a constitutionally significant degree." Id. at 201. The pending motion for summary judgment does not specifically address Pledger's claim that Rosch deprived him of due process by failing to correct false information in his VDOC file and allowing the information to be used to confine him in segregation indefinitely. Consequently, to the extent the motion seeks summary judgment on any due process claim asserted against Rosch, the motion will be denied without prejudice.

**3.    Due Process Claims Against Stanley, Anderson, and Manis Related to the Disciplinary Proceedings**

The VDOC defendants next argue that Pledger's due process claims against Stanley, Anderson, and Manis related to the disciplinary proceedings "should be dismissed because they are not cognizable under . . . § 1983." ECF No. 138 at 8. To prevail on a claim for denial of procedural due process, "a plaintiff must first identify a protected liberty or property interest and then demonstrate deprivation of that interest without due process of law." Shaw v. Foreman, 59 F.4th 121, 127 (4th Cir. 2023) (internal quotation marks omitted). "In the carceral context, a prisoner claiming a violation of his right to procedural due process must show: (1) that there is a state statute, regulation, or policy that creates such a liberty interest, and (2) that denial of such an interest imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. (internal quotation marks omitted).

The VDOC defendants argue that the due process claims against Stanley, Anderson, and Manis fail because the 90-day loss of commissary and telephone privileges imposed by Stanley

18

and upheld by Anderson and Manis did not give rise to an actionable liberty interest. ECF No. 138 at 10. In response, Pledger asserts, as he did in the operative complaint, that he was denied the opportunity to present "exculpatory evidence" at the disciplinary hearing and that this "led to a conviction and [an] indefinite sentence in segregation in a supermax prison setting." ECF No. 157 at 12.

This theory of liability, which is not addressed in the pending motion, largely mirrors the theory of liability addressed by the Fourth Circuit in Shaw v. Foreman. In that case, the Fourth Circuit held that a pro se inmate "plausibly alleged a violation of his procedural due process rights" based on prison officials' alleged refusal to review exculpatory video evidence during his disciplinary hearing, after which the inmate was found to have committed the offenses and transferred to Red Onion. Shaw, 59 F.4th at 127. The Fourth Circuit emphasized that "maximum-security facilities like Red Onion have 'highly restrictive conditions, designed to segregate the most dangerous prisoners from the general prison population,'" id. (quoting Wilkinson v. Austin, 545 U.S. 209, 213 (2005)), and, accordingly, that "incarceration in a maximum-security environment is so atypical and significant that it would give rise to a liberty interest under any plausible baseline," id. (internal quotation marks and alterations omitted). The court further determined that the inmate plausibly alleged that he was deprived of a liberty interest without due process based on the prison officials' "refusal to review video evidence during his pre-transfer disciplinary hearing." Id. Although the Fourth Circuit recognized that the inmate primarily focused on a different purported liberty interest in his complaint, the court emphasized that it "reads pro se pleadings to raise the strongest arguments that they suggest" and "consider whether a pro se civil rights plaintiff is entitled to relief under any legal theory that his factual allegations might plausibly convey." Id. at 128.

19

Pledger's second amended complaint contains allegations against Stanley, Anderson, and Manis that are substantially similar to those in <u>Shaw</u>. He alleges that he was denied access to exculpatory video evidence and eyewitness testimony during the disciplinary proceedings and that the defendants knew that a conviction for aggravated assault on a non-offender would result in him being "placed in a supermax facility" and kept "in segregation indefinitely." 2d Am. Compl. ¶ 60. Additionally, evidence submitted in response to the defendants' motion confirms that prison officials relied on the disciplinary infraction to assign Pledger to Security Level S and transfer him to Red Onion. Consequently, Pledger has "plausibly alleged a colorable violation of his procedural due process rights." <u>Shaw</u>, 59 F.4th at 128. Because this theory of liability is not specifically addressed in the pending motion, the motion will be denied without prejudice with respect to the claim for denial of due process asserted against Stanley, Anderson, and Manis.

### 4.      Claims for Denial of Access to the Courts and Counsel Against Stanley and MacVean

The VDOC defendants have also moved for summary judgment on Pledger's claims that Stanley and MacVean deprived him of his right to access the courts and counsel by preventing him from making legal phone calls from February 4, 2022, until July 4, 2022. For the following reasons, the court agrees that summary judgment is appropriate.

To prevail on a claim for denial of access to the courts, a plaintiff must establish that he suffered an "actual injury" as a result of the denial of access. <u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996); <u>see also</u> <u>Cochran v. Morris</u>, 73 F.3d 1310, 1317 (4th Cir. 1996) (emphasizing that a prisoner must "identify an actual injury" resulting from the denial of access and "cannot rely on conclusory allegations"). To satisfy the "actual injury" requirement, a plaintiff "must identify a

20

'nonfrivolous,' 'arguable' underlying claim" that has been frustrated or impeded as a result of the defendants' actions. Christopher v. Harbury, 536 U.S. 403, 415 (2002) (quoting Lewis, 518 U.S. at 353 & n.3). The Supreme Court has emphasized that "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." Id. In particular, a plaintiff must describe the cause of action "well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." Id. at 416.

Neither the operative complaint nor Pledger's response in opposition sets forth facts sufficient to satisfy the "actual injury" requirement. In his response in opposition, Pledger argues that he was deprived of the opportunity to "present more meritorious claims that were omitted from the motion [for new trial] and direct appeal," including a claim challenging the sufficiency of the evidence to support his convictions for second-degree murder, armed assault with the intent to commit murder, and assault and battery. ECF No. 157 at 18. However, he does not "specify facts demonstrating that the claims [he wished to pursue] were nonfrivolous." Monroe v. Beard, 536 F.3d 198, 206 (3d Cir. 2008). His conclusory assertion that there was insufficient evidence to convict him does not suffice to withstand summary judgment.[7] See, e.g., Thomas v. Dickson, No. 18-2317, 2019 WL 6005487, at *3 (6th Cir. 2019) ("Here, Thomas merely alleged that [defendants' actions] prevented him from raising a claim of actual innocence in post-conviction proceedings . . . . He provided no further information about his underlying claim and, thus, failed to show that the arguable nature of the underlying claim is more than hope.") (internal quotation marks omitted).

---

[7] In light of this decision, the court finds it unnecessary to address the VDOC defendants' argument that Pledger's inability to contact counsel from February 4, 2022, until July 4, 2022, resulted from his own failure to complete necessary forms.

For similar reasons, Pledger has not proffered evidence sufficient to establish a violation of his Sixth Amendment right to counsel. The Sixth Amendment states, in part, that in "all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "It has long been recognized that the right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). "[A] critical component of the Sixth Amendment's guarantee of effective assistance is the ability of counsel to maintain uninhibited communication with his client and to build a relationship characterized by trust and confidence." United States v. Chavez, 902 F.2d 259, 265 (4th Cir. 1990) (internal quotation marks omitted). However, "[n]ot all government interference with the attorney-client relationship" gives rise to a Sixth Amendment violation. Id. (internal quotation marks omitted). "Rather, it is well settled that some showing of prejudice is a necessary element of a Sixth Amendment claim based on an invasion of the attorney-client relationship." Id.; see also United States v. Allen, 491 F.3d 178, 192 (4th Cir. 2007) ("Because Appellants do not allege any prejudice . . . , nor is any prejudice clear from the record, there was no Sixth Amendment violation."); United States v. Hohn, 123 F.4th 1084, 1112 (10th Cir. 2024) ("A majority of the circuit courts support [the] view that Sixth Amendment claims concerning purposeful, unjustified intrusions into the attorney-client relationship require the defendant to show prejudice . . . .") (collecting cases, including Allen, supra).

Pledger has not made the showing of prejudice required to prevail on a Sixth Amendment claim. While Pledger emphasizes that his criminal appellate attorneys "were in the middle of challenging [his convictions] through a motion for a new trial," ECF No. 157 at 17, that motion and the Commonwealth of Massachusetts's response were filed months before Pledger purportedly lost the ability to communicate with his attorneys, and he does not identify

any prejudice resulting from his absence from the hearing on the motion. Similarly, the opening brief submitted in support of his consolidated appeal was not filed until February 6, 2023, seven months <u>after</u> Pledger purportedly regained access to telephone calls. Consequently, there is no plausible basis to conclude that Pledger's appeal was prejudiced by the alleged denial of access to telephone calls and other forms of communication from February 4, 2022, until July 4, 2022. <u>See, e.g.</u>, <u>Conklin v. Espinda</u>, No. 1:19-cv-00087, 2019 WL 7116351, at *11 (D. Haw. Dec. 23, 2019) (dismissing a similar Sixth Amendment claim for lack of prejudice where an inmate's attorney filed a notice of appeal and opening brief "long before" the inmate was prohibited from making calls while housed in a restrictive housing unit). For these reasons, the VDOC defendants' motion will be granted with respect to the claims for denial of access to the courts and counsel.

**B.    Claims Subject to Dismissal for Failure to State a Claim**

Although the pending motion does not address all of the claims asserted in the operative complaint, the court concludes that several claims must be dismissed for failure to state a claim upon which relief may be granted. <u>See</u> 28 U.S.C. § 1915A(b)(1) (providing that the court may "dismiss the complaint, or any portion of the complaint [filed by a prisoner against a government official], if the complaint . . . fails to state a claim upon which relief may be granted"); <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (explaining that a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

First, to the extent Pledger claims that Stanley, MacVean, Anderson, and Manis violated the Privileges and Immunities Clause of Article IV of the Constitution based on actions taken during and after the disciplinary hearing, 2d Am. Compl. ¶ 71, such claim must be dismissed. The Privileges and Immunities Clause provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, c.1. "Discrimination on the basis of out-of-state residence is a necessary element for a claim under the Privileges and Immunities Clause" of Article IV. Giannini v. Real, 911 F.2d 354, 357 (9th Cir. 1990). Although the record indicates that Pledger was convicted in Massachusetts, the operative complaint does not plausibly allege that Stanley, MacVean, Anderson, or Manis discriminated against Pledger based on his state of residence. Consequently, it fails to state a claim under the Privileges and Immunities Clause. See Barefoot v. City of Wilmington, 306 F.3d 113, 125 (4th Cir. 2002) ("The Appellants make no argument regarding any discrimination between citizens of different States, nor can we conceive of any. Accordingly, the Appellants have failed to state a claim under Article IV.").

Second, the operative complaint fails to state a plausible claim for denial of equal protection against Stanley and MacVean. See 2d Am. Compl. at 36 (referring to "equal protection" in the prayer for relief against Stanley and MacVean). "To state a claim for a violation of the Equal Protection Clause, 'a plaintiff must plausibly allege first that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" Desper v. Clarke, 1 F.4th 236, 248 (4th Cir. 2021) (quoting Fauconier v. Clarke, 966 F.3d 265, 277 (4th Cir. 2020)). Because the operative complaint does not allege facts that would satisfy either element, it fails to state a cognizable equal protection claim against Stanley and MacVean.

Third, any claim for damages under § 1983 against Clarke, Rosch, and Anderson in their official capacities must be dismissed. It is well settled that the Eleventh Amendment "bars suit against state officials in their official capacity for damages under 42 U.S.C. § 1983." Lawson v. Gault, 828 F.3d 239, 278 (4th Cir. 2016) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). Additionally, whereas § 1983 "permits suit against 'every person' who deprives an individual of his or her rights under color of state law, neither States nor state officials acting in their official capacities constitute 'persons' within the meaning of the statute when sued for monetary relief." Fauconier, 966 F.3d at 279-80.

Fourth, "Title II of the ADA does not . . . provide for suit against a public official acting in his individual capacity." Everson v. Leis, 556 F.3d 484, 501 n.7 (6th Cir. 2009) (collecting cases); see also Barnes v. Young, 565 F. App'x 272, 273 (4th Cir. 2014) (same). Instead, "the proper defendant under a Title II claim is the public entity or an official acting in [his] official capacity." Qui v. Univ. of Cincinnati, 803 F. App'x 831, 837 (6th Cir. 2020) (emphasis added). Consequently, any ADA claim asserted against defendants in their individual capacities must be dismissed.

Finally, the operative complaint fails to state a viable claim for gross negligence against Clarke or Rosch stemming from the use of force at River North, or against Stanley and McVean stemming from Pledger's inability to make legal calls. "[T]he standard for gross negligence in Virginia is very high." Doe v. Russell Cnty. Sch. Bd., 292 F. Supp. 3d 690, 716 (W.D. Va. 2018). "Gross negligence is 'a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person.'" Elliott v. Carter, 292 Va. 618, 622, 791 S.E.2d 730, 732 (Va. 2016) (quoting Cowan v. Hospice Support Care, Inc., 268 Va. 482, 487, 603 S.E.2d 916, 918 (Va. 2004)). It

"requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful negligence." Id. "It is a heedless and palpable violation of legal duty respecting the rights of others which amounts to the absence of slight diligence, or the want of even scant care." Williams v. Kincaid, 45 F.4th 759, 776 (4th Cir. 2022) (internal quotation marks omitted).

Pledger's claim of gross negligence against Clarke and Rosch is based on the allegation that they "fail[ed] to take disciplinary or other actions" that would have prevented him from being physically assaulted by officers at River North. 2d Am. Comp. ¶ 69. However, "courts analyzing gross negligence claims based on a prison official's failure to prevent harm to an inmate have found that such claims, like Eighth Amendment failure-to-protect claims, require that the official have knowledge, actual or constructive, of the risk of harm specific to [the plaintiff]." Crosby v. Manis, No. 7:23-cv-00124, 2025 WL 943661, at *10 (W.D. Va. Mar. 28, 2025). Here, the operative complaint does not allege facts from which the court could reasonably infer that Clarke or Rosch had knowledge of the particular risk of harm that Pledger faced at River North in January 2022. Consequently, the claim for gross negligence against Clarke and Rosch must be dismissed.

The court will also dismiss any claim of gross negligence against Stanley and MacVean stemming from their alleged inference with Pledger's ability to contact his attorneys. Pledger's allegations regarding the restrictions on his ability to communicate with counsel, while understandably frustrating, fall far short of describing the type of conduct that would "shock fair-minded persons" or amount to a "complete neglect" of Pledger's safety. Elliott, 292 Va. at 622, 791 S.E.2d at 732 (internal quotation marks omitted); see also Wilkins v. Montgomery, 751 F.3d 214, 229 (4th Cir. 2014) (providing examples of "far more egregious" Virginia cases in

which claims of gross negligence were allowed to proceed, including a case in which a "260-pound football coach aggressively tackled a 13-year-old, 144-pound, inexperienced football player, breaking his left arm") (citing Koffman v. Garnett, 265 Va. 12, 574 S.E.2d 258 (Va. 2003)).

## C.      Remaining Claims

The remaining claims falls into two groups: (1) claims against Landry, Weaver, Adams, Halsey, Coley, Newman, Anderson, Miller, Davis, Goad, and King arising from the use of force at River North on January 13, 2022, and (2) claims against Stanley, Anderson, Manis, Rosch, and Clarke (in his official capacity only), arising from Pledger's disciplinary proceedings and subsequent assignment to segregation at Red Onion, including the alleged failure to accommodate his hearing impairment. The case is currently set for trial on August 6 and 7, 2026. Having reviewed the record, the court finds it appropriate to sever the second group of remaining claims into a separate action and proceed to trial in August solely on the first group of remaining claims.

Pursuant to Federal Rule of Civil Procedure 21, "the court may at any time, on just terms, add or drop a party" or "sever any claim against a party." Rule 21 "furnishes the mechanism for separating a case into separate actions." Acevedo-Garcia v. Monroig, 351 F.3d 547, 558 (1st Cir. 2003). Courts have "broad discretion" in deciding whether to sever claims. Rice v. Sunrise Express, Inc., 209 F.3d 1008, 1016 (7th Cir. 2020). "There is no time limitation on the use of Rule 21," Avenatti v. Fox News Network LLC, 41 F.4th 125, 134 (3d Cir. 2022), and "justification for severance is not confined to misjoinder of parties," Spencer, White & Prentis, Inc. v. Pfizer, Inc., 498 F.2d 358, 361 (2d Cir. 1974) (footnote omitted). In determining whether severance is appropriate, courts consider the following factors: (1) whether the claims

to be severed are significantly different from other claims; (2) whether the claims will require different witnesses or documentary proof; (3) whether a party will be prejudiced if claims are severed; and (4) whether a party will be prejudiced if claims are not severed. See Clements v. Austin, 617 F. Supp. 3d 373, 375 (D.S.C. 2022); Equal Rights Ctr. v. Equity Residential, 483 F. Supp. 2d 482, 489 (D. Md. 2007).

Here, the relevant factors weigh in favor severing the second group of remaining claims. As noted above, those claims relate to Pledger's disciplinary proceedings and his subsequent placement in solitary confinement at Red Onion. The issues presented by those claims are significantly different from those presented by the remaining claims involving the use of force at River North on January 13, 2022. Additionally, the second group of remaining claims involves different witnesses and different documentary evidence and will require further briefing by the parties. Finally, given the number of defendants and claims, the court is convinced that proceeding to trial solely on the force-related claims will be more efficient and less unwieldy and that it will alleviate potential juror confusion and prejudice to both sides. See, e.g., Wall v. Clarke, No. 7:19-cv-00260, 2023 WL 4824601, at *1-2 (W.D. Va. July 27, 2023) (severing an inmate's claims related to his long-term confinement in segregation into a separate action and ordering that the original case proceed to trial solely on the plaintiff's claims of retaliation, excessive force, assault, and battery).

Accordingly, the court finds it appropriate to sever the second group of remaining claims against defendants Stanley, Anderson, Manis, Rosch, and Clarke into a separate action. The present case, 7:23-cv-00313, will proceed to trial on the first group of remaining claims under § 1983 and Virginia law against Landry, Weaver, Adams, Halsey, Coley, Newman, Anderson, Miller, Davis, Goad, and King.

## IV.    Conclusion

For the reasons stated, the VDOC defendants' motion for partial summary judgment, ECF No. 137, is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART.** The present case will proceed on Pledger's remaining claims under § 1983 and Virginia law against Landry, Weaver, Adams, Halsey, Coley, Newman, Anderson, Miller, Davis, Goad, and King arising from the use of force at River North on January 13, 2022. An appropriate order will be entered.

Entered: March 30, 2026

Michael F. Urbanski
U.S. District Judge
2026.03.30 15:45:48
-04'00'

Michael F. Urbanski
Senior United States District Judge

29